POWELL v. BEEBE.

1. WILLS — CONSTRUCTION BY BENEFICIARIES — POSSESSION OF REALTY—DEVISES.

Where testator devised certain property to his widow during her lifetime and the remainder in equal parts to his two sons, one of whom resided on the devised property for many years after testator's death with the widow, the other son being an incompetent, the acts of the parties could not be treated as a practical construction of the devise on the theory that they permitted the devisee to go into possession, as he could claim no possessory right until the death of the widow.

2. SAME—INTENT.

Where one of the sons of the testator was a helpless cripple and the other an incompetent, and it appeared from the will that decedent intended to make an equal division of certain real property between them, such intent will be given effect although the description of the part devised to one son was defective.

3. SAME—EVIDENCE—PRESUMPTIONS.

The presumption that a testator did not intend to die intestate as to any part of his estate cannot prevail contrary to the express intention shown by the will.

Appeal from Cass; Des Voignes, J. Submitted April 7, 1911. (Docket No. 41.) Reargued October 9, 1911. Decided November 3, 1911.

Bill by Gardner Powell, administrator with the will annexed of the estate of Sarah A. Beardsley, deceased, against Hamaline Beebe for the construction of a will. From a decree for complainant, defendant appeals. Reversed.

*D. O. French,* for appellant.

*Clarence M. Lyle* and *M. L. Howell,* for appellee.

McALVAY, J. A bill was filed for the construction of the will of Abel Beebe, executed July 31, 1876. He died May 6, 1881, leaving surviving him a widow, Mary

Beebe, and three adult children, Lafayette, Hamaline, and Sarah Ann. At the time of the execution of this will, and also at the time of his death, Abel Beebe was the owner in fee simple of the following described lands in Porter township, Cass county, viz.: The S. E. ¼ of the S. E. ¼ (except one acre in the southeast corner thereof sold for a cemetery), the S. W. ¼ of the S. E. ¼, and the S. ½ of the N. W. ¼ of the S. E. ¼, all of section No. 21; and the W. ½ of the N. E. ¼, and the W. ½ of the N. W. ¼ of the S. E. ¼, all of section 22. No dispute arises relative to the testamentary disposition of the land located on section 22. It was used all together as a farm with the buildings near the southwest corner of the 80-acre description. The above-described 99 acres of land situated on section 21 constituted the home farm of the testator, the house and buildings of such farm being located upon the S. E. ¼ of the S. E. ¼ of said section. These lands on this section were purchased by the testator in 1840 by deed, in which they were described as the "southeast quarter of the southeast quarter of section 21, and also the west half of the southeast quarter of said section 21, town 7 south, of range 13 west." He later sold the N. ½ of the N. W. ¼ of the S. E. ¼ of said section and one acre for cemetery purposes situated in the southeast corner of the S. E. ¼ of the S. E. ¼ of said section.

The will we are asked to construe reads as follows:

"In the name of God, Amen. I, Abel Beebe, of the township of Porter, in the county of Cass, and State of Michigan, of the age of sixty-seven years and being of sound mind and memory, do make, publish and declare this my last will and testament in manner following, that is to say:

"First. After the payment of all just and legal demands against my estate, I do give and bequeath unto my wife, Mary Beebe, the use of all my real estate so long as she remains my widow, together with the provisions the law makes for her in my personal estate. To my daughter Sarah Ann Beardsley, I give and bequeath the sum of six hundred dollars ($600.00) over and above all

sums of money she has heretofore received out of my estate or any notes now held by my son, Lafayette Beebe. The aforesaid sum of six hundred dollars to be paid to my daughter, Sarah Ann Beardsley, by execution of this my last will and testament as soon as convenient after my decease.

"To my son Lafayette Beebe, I give and bequeath, after the decease of my wife Mary Beebe, the following described real estate, viz. : The south part of the west half of the southeast quarter of section number twenty-one, also the west and north part of the southeast quarter of section number twenty-one, also the west half of the northwest quarter of southeast quarter in section number twenty-two. All in township number seven south of range number 13 west in the county of Cass and State of Michigan.

"To my son Hamaline Beebe, I do give and bequeath the use during his natural life of the following described real estate, viz. : The west half of the northeast quarter of section number twenty-two in township number 7 south, of range thirteen west in the county of Cass, and State of Michigan, but at the decease of the said Hamaline Beebe the said real estate last described to be equally divided amongst his children if he leaves any, and in case he leaves no children then said real estate last described to be equally divided amongst my heirs that may be living after his decease.

"To Elizabeth Beebe, wife of Hamaline Beebe, I do give and bequeath the sum of ten dollars ($10) to be paid to her by the execution of this my last will and testament as soon as convenient after my decease.

"Lastly, after the payment of all lawful demands against my estate at the time of my decease and the widow's right therein of my personal estate, if any there be left, is to be equally divided between my two sons, Lafayette and Hamaline Beebe. And I do hereby nominate and appoint my wife, Mary Beebe, to be the executrix of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof I have hereunto set my hand and seal this 31st day of July A. D. 1876.

"ABEL BEEBE.    [Seal]"

An attestation and publication clause is added, signed by two witnesses.

The files and records in this estate show that this will was admitted to probate June 15, 1881. The widow filed her bond as executrix, qualified, and entered upon the duties of such office. Appraisers and commissioners on claims were appointed and made and filed their reports. No other proceedings were ever had in said estate. The executrix up to the date of her death never filed any report, and was never discharged. After her death no proceedings were taken to close the estate. The son Lafayette was a helpless cripple, who had always lived at his father's house, and, after the father's death, continued to live there with his mother until his death. He was born in 1837 and died in 1893. The son Hamaline was about three years younger than Lafayette, and is still living. He is mentally incompetent, and now represented by a guardian. He was permitted to marry twice. One of his children was also an incompetent. The daughter Sarah Ann Beardsley was the eldest child of the testator. She died in 1908, aged 74. The administrator of her estate is complainant in this suit. During her lifetime the widow lived upon the farm homestead, and under the will had and was possessed of a life estate in all of the real estate of the testator. Upon the death of Lafayette, who never married, his estate and interest in these lands under the will (subject to her life estate) was inherited by his mother. It appears from the record that his estate was never probated or his interest under the will determined. The mother and no other person had always been in possession of all testator's real estate after the testator's death, and so continued in possession until her death in 1898. In 1895 the widow, Mary Beebe, described as "sole heir at law of Lafayette Beebe, deceased," "in consideration of the sum of one dollar, of love and affection, and for the purpose of making a division of the lands inherited from her son Lafayette," undertook to convey to Sarah A. Beardsley and Hamaline Beebe, under certain conditions and limitations, the land which complainant contends was devised by the testator to his son Lafayette. It purported

to convey to Mrs. Beardsley the entire homestead farm
and to Hamaline Beebe the 20 acres on section 22.   This
deed was made subject to many limitations and condi-
tions on the part of Mrs. Beardsley.  It was made while
the aged grantor was sick in bed, and there is evidence
tending to show that it was induced by undue influence.
Hamaline at this time was under guardianship.   Mrs.
Beardsley died November 3, 1908, testate, and complain-
ant administrator with the will annexed, claiming to have
been licensed by the proper probate court to sell her real
estate to pay debts, ascertained that claim was made by
Hamaline Beebe that he was the owner of an undivided
one-half of the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 21.   He
also ascertained what is claimed to be the faulty descrip-
tion in the will of this land in dispute.   He then filed this
bill to quiet title, and remove cloud therefrom, and to have
this will construed.   Hamaline Beebe was made sole de-
fendant.   He has by his guardian answered, traversing
and denying the material allegations of the bill of com-
plaint, and claiming fraud on the part of his deceased sis-
ter in getting possession of his property.   Issue was joined,
and the hearing of the case resulted in a decree for com-
plainant.   Defendant appeals.

The contention of complainant is that the will in ques-
tion devised the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 21 to his son
Lafayette.   Defendant contends that this description was
not included in the will.   This is the only question in the
case, and must be determined by a construction of the
will to ascertain the intention of the testator in describing
the devise to the son Lafayette.   Testator owned two
farms of 100 acres each (except one acre out of the corner
of the homestead farm), and also personal estate of an
amount not shown, but evidently in his opinion enough to
warrant a provision for the equal division of a balance
(after paying all lawful demands and $600 to his married
daughter) between his two sons.   He had formerly owned
all the S. E. $\frac{1}{4}$ of section 21, except the N. E. $\frac{1}{4}$.   He had
sold the N. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of this quarter section and

also one acre out of the southeast corner of the S. E. ¼ thereof.   The following diagram shows all the lands owned by testator at the time of his death, and the acreage of the different descriptions:

The devise in dispute reads:

"To my son Lafayette Beebe, I give and bequeath, after the death of my wife, Mary Beebe, the following described real estate, viz. . The south part of the west half of the southeast quarter of section number 21; also the west and north part of the southeast quarter of section number 21; also the west half of the northwest quarter of the southeast quarter in section number twenty-two."

Complainant's contention is that the clause of this devise, "Also the west and north part of the southeast quarter of section number twenty-one," describes the remaining 39 acres of the S. E. ¼ of the S. E. ¼ of said section; in other words, the homestead 40 on which the farm buildings were located.   Defendant urges that this is a forced, and not a natural, construction; that taking this devise as a whole, and applying it to the land testator owned on that quarter section, a reasonable construction would be that the testator intended "the south part of the west half of the southeast quarter of section number twenty-one " to describe the south 40 acres of the said W. ½; that the next clause, "Also the west and north part of the southeast quarter of section twenty-one," was intended to describe the south 20 acres he owned in the

N. W. ¼ of such quarter section; that it is the only west and north part of that quarter section he owned at the time, and cannot be construed to describe the S. E. ¼ of the S. E. ¼ (less the one acre); that to give such construction would require a substitution by construction of words he did not use in his description of this land, and with meaning directly opposite to those used by the testator.

Complainant also urges that the practical construction given by the parties and their acquiescence therein for many years should be considered as of great weight, and insists that the son Lafayette at once went into possession of the 99 acre farm, and so continued during the remainder of his life without protest or disturbance. This claim is not founded in law or in fact. The widow during his entire life, after the death of testator, was by right under the will entitled to the absolute possession of all the real estate to the exclusion of every other person, and, in fact, maintained such actual possession. The son Lafayette made his home with her during his entire life. No estate in possession of this land by the terms of the will could come to him as a remainderman during the continuance of the mother's life estate. The incompetency of the other son, Hamaline, forbids any construction by acquiescence on his part. His incapacity is not disputed. It was recognized by complainant's decedent, Mrs. Beardsley, and the widow in the deed under which she claims title which is the basis of this suit, and the record shows that the first guardian of Hamaline Beebe never read the will or knew its contents, except from hearsay, and during the 13 years he acted obtained no other information, or made any attempt to ascertain his ward's rights in the premises. There is evidence in the case tending to show that the testator, some years before he made his will, expressed an intention of giving the homestead farm to Lafayette and the other farm to Hamaline, and also of statements made by the widow, Lafayette, and perhaps Hamaline that such was the disposition made by the will. The latter is of no force at all because of Hamaline's incompetency and the

former fails, because in making the will the testator, even under the construction claimed by complainant, took part of the other farm from Hamaline and gave it to Lafayette.

No assistance appears to be given to us in this construction outside of the instrument itself. There is one feature of this instrument to be considered and which should materially aid in this construction. If this will indicates a general intention or plan on the part of the testator as to the provisions he intended to make for his unfortunate sons, the fair and reasonable construction which would accord with such intention should be followed. It is apparent that they were equally entitled to his sympathy and his bounty. From the will it appears that the residue of all his personal estate was to be divided equally between them. He provided that they should take certain real estate after the life estate of the widow ceased. It is reasonable to suppose that equal provision was intended to be made for them out of such real estate.

The construction defendant contends for would make such equal provision, and in our opinion is the proper and reasonable construction which should be given to this clause of the will. He gave 80 acres of land of practically equal value to each son. His will did not dispose of the 39 acres of the homestead farm upon which the buildings were located.

While it is presumed that a testator did not intend to die intestate as to any of his estate, and if a will is susceptible of two constructions the courts will prefer the construction by which the whole estate is disposed of, yet such construction must be reasonable and consistent with the general scope and provisions of the will and with a fair construction of its terms. To follow this presumption of intention in the instant case would be contrary to the intention we find expressed by the testator, which is never permissible.

Our construction is, therefore, that Abel Beebe, as to the remainder over after the expiration of the life estate of his wife in the S. E. ¼ of the S. E. ¼ of section 21, died

intestate, and said land descended to his heirs at law; defendant taking one-third, and, upon the death of the mother (who inherited one-third from Lafayette), one-sixth, making one-half of said description, and complainant's decedent, Mrs. Beardsley, taking in the same manner the other half. Complainant, therefore, was not entitled to the relief prayed for and granted.

The decree of the circuit court is reversed and set aside, and a decree will be entered according to this opinion, with costs of both courts to defendant.

OSTRANDER, C. J., and BIRD, STEERE, MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.